UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
                                      :
**IN RE DYNEX CAPITAL, INC.**         :   Civ. No.:  05-1897 (HB)
**SECURITIES LITIGATION**             :
                                      :
                                      :
                                      :
                                      :
                                      :
                                      :
------------------------------------- X


**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, AND (III) SCHEDULING OF A FINAL APPROVAL HEARING**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND OF THE LITIGATION............................................................................. 3

ARGUMENT ......................................................................................................................... 9

I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............... 9

II.    NOTICE TO THE CLASS SHOULD BE APPROVED ....................................................... 13

CONCLUSION..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...........................................................................................10

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)............................................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................12, 13

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................................9, 10

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................................10, 11

*In re Interpublic Sec. Litig.*,
   Nos. 02 Civ. 6527(DLC), 03 Civ. 1194(DLC), 2004 WL 2397190(S.D.N.Y. Oct. 26,
   2004) ..............................................................................................................................9

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ....................................................................................10

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998)............................................................................................9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................................10

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...........................................................................12

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008).....................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).........................................................................................9, 13

Lead Plaintiff Pension Fund Local 445 ("Lead Plaintiff"[1]) respectfully submits this memorandum of law in support of its motion for: (i) preliminary approval of the settlement ("Settlement") of this securities class action (the "Action" or "Litigation") against the Dynex Defendants;[2] (ii) approval of the form and manner of notice to Class Members; and (iii) the scheduling of a hearing (the "Settlement Hearing") on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses on or about 100 days from entry of the Preliminary Approval Order.

## INTRODUCTION

After over six years of hard fought litigation, which included a two year interlocutory appeal to the Second Circuit (from June 2006 through June 2008), full merits and expert discovery (including the production and review of over 1.5 million pages of documents, depositions of fact witnesses experts and the individual defendants), class certification proceedings, and full briefing on summary judgment, Lead Plaintiff has reached an agreement, on the eve of trial, to settle this securities class action against the Dynex Defendants, as provided in the Stipulation of Settlement, dated November 15, 2011. The proposed Settlement provides a substantial monetary benefit to the Class of $7.5 million in cash, which represents a reasonable percentage of likely damages (although damage numbers were disputed by the parties) had Plaintiffs survived the pending motion for summary judgment and then prevailed in all respects at trial and appeal. The settlement amount is also *substantially* larger than the median settlement

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation"), dated November 14, 2011, and filed with the Court concurrently with this motion.

[2] The Dynex Defendants are Dynex Capital, Inc. ("Dynex Capital"), Merit Securities Corporation ("Merit Securities"), Stephen Benedetti ("Benedetti") and Thomas Potts ("Potts") (collectively, "Dynex" or the "Company") and together with Lead Plaintiff, on behalf of Members of the Class, the "Parties").

1

for securities cases, which in 2009 was 2.3% of damages.[3]  Further, the $7.5 million all cash settlement is a particularly excellent result and is being paid entirely from Dynex's cash holdings and not from insurance.[4]  The Settlement, if approved, will resolve all claims asserted against the Dynex Defendants in the Litigation.

The Settlement was reached after years of litigation and discovery at a time when the Parties fully understood the strengths and weaknesses of their respective positions, and only after the Parties engaged in extensive arm's-length negotiations mediated by Jed D. Melnick, Managing Mediator for the Weinstein Group.  Lead Plaintiff and Class Counsel believe that the proposed Settlement is an excellent result that is in the best interests of the Class, providing an immediate monetary benefit to the Class of $7.5 million in cash.  The Settlement must also be considered in the context of the risk that further protracted and contested litigation, including trial and likely appeals, could result in a lesser recovery against the Dynex Defendants or no recovery at all.

At the Settlement Hearing, Lead Plaintiff will submit detailed papers supporting the proposed Settlement, and will ask the Court to determine whether the Settlement is fair, reasonable and adequate to the Class.  At this time, however, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Specifically, Lead Plaintiff requests that the Court enter the proposed Preliminary Approval Order Providing for Notice and Hearing in Connection with Proposed Class Action Settlement

---

[3] *See Securities Class Action Settlements: 2009 Review and Analysis*, Cornerstone Research, *available at* http://securities.stanford.edu/Settlements/REVIEW_1995-2009/Settlements_Through_12_2009.pdf (last visited, October 13, 2011)

[4] *See* http://www.marketwatch.com/story/dynex-capital-inc-reaches-agreement-in-principle-to-settle-class-action-securities-litigation-and-announces-cmbs-refinance-2011-10-04?d=nbkt (Dynex press release explaining that the settlement will be paid by Dynex, will be included as an expense in Dynex's financial expenses, and will reduce earnings per share for the third quarter of 2011 by approximately $0.186 per common share).

1274898.1 1                                     2

(the "Preliminary Approval Order"), attached as Exhibit 1 to the Declaration of Kenneth M. Rehns in Support of Preliminary Approval ("Rehns Declaration) (and as Exhibit A to the Stipulation, filed concurrently herewith), which, *inter alia*, will:

    (i)    preliminarily approve the Settlement on the terms set forth in the Stipulation;

    (ii)    approve the form and content of the Notice of Pendency of Class Action and Proposed Settlement ("Notice"), Proof of Claim and Release form ("Proof of Claim") and Summary Notice of Proposed Settlement ("Summary Notice"), attached as Exhibits A-1, A-2 and A-3 to the Stipulation, respectively;

    (iii)    find that the procedures established for distribution of the Notice and Proof of Claim and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. 104-67, 109 Stat. 737; and

    (iv)    schedule the Settlement Hearing and set out a schedule and procedures for: disseminating the Notice and Proof of Claim and publishing the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the proposed Plan of Allocation, Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses or Lead Plaintiff's requests for reimbursement of costs and expenses; and submitting papers in support of final approval of the Settlement.

## BACKGROUND OF THE LITIGATION

This class action is a case of enormous complexity that was litigated vigorously for over six years before this Court as well as the Second Circuit. The case resulted in novel and important decisions with respect to the standard under Section 10(b) for pleading scienter with respect to a corporate defendant alone as well as the requirements for determining the efficiency of the market for asset backed bonds for purposes of class certification.

The case was commenced on February 7, 2005, when Lead Plaintiff filed an Initial Class Action Complaint against Dynex Capital, Merit Securities, Potts, Benedetti, Lehman Brothers Inc., and Greenwich Capital Markets, Inc. in the United States District Court for the Southern

District of New York (the "Court") under the caption *Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital, Inc. et al.*, Civ. No. 05-1897-HB (S.D.N.Y.) alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, on behalf of purchasers of Merit Securities' Collateralized Bond Series 13 Bonds ("Merit 13 Bonds") between August 11, 1999 and May 11, 2004 (the "Initial Complaint Class Period"). On February 7, 2005, a press release was published on *Market Wire* alerting investors to the filing of the lawsuit and that the deadline to seek appointment as lead plaintiff expired on April 8, 2005.

After being appointed as Lead Plaintiff by this Court, Lead Plaintiff filed the Amended Class Action Complaint ("First Amended Complaint" or "FAC") against the Dynex Defendants on behalf of purchasers in the aftermarket of Merit Securities' Collateralized Bond Series 12 ("Merit 12 Bonds") and the Merit 13 Bonds (collectively, the "Merit Bonds") between February 7, 2000 and May 13, 2004 (the "Class Period") alleging violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. Not named in the First Amended Complaint were Lehman Brothers Inc. and Greenwich Capital Markets, Inc., and the Class Period did not include the initial public offerings of the Merit Bonds in 1999. Specifically, Lead Plaintiff alleged that Defendants engaged in a common fraudulent scheme to artificially inflate the price of the Merit Bonds by misrepresenting the quality and manner in which the Merit Bond's mobile home loan collateral was originated and underwritten and then, throughout the Class Period, to conceal the impaired nature of that collateral by misrepresenting that the poor performance of the collateral in terms of delinquencies, defaults and loss severities was the result of "market" conditions.

On July 15, 2005, Defendants moved to dismiss the First Amended Complaint. After full briefing and oral argument, on February 10, 2006, the Court granted Defendants' motion to

dismiss as to Defendants Potts and Benedetti but denied Defendants' motion as the corporate defendants, Dynex Capital and Merit Securities ("First Motion to Dismiss Order").  Specifically, the Court held that Lead Plaintiff had adequately alleged that Dynex Capital and Merit Securities had made false and misleading statements with the requisite scienter, but that Lead Plaintiff had failed to adequately plead scienter as to Defendants Potts and Benedetti.

On February 24, 2006, Defendants moved for reconsideration of the Court's First Motion to Dismiss Order.  Defendants' motion was denied on June 2, 2006.  On June 16, 2006, pursuant to 28 U.S.C. 1292(b), Defendants petitioned the United States Court of Appeals for the Second Circuit for permission to appeal the First Motion to Dismiss Order.  On September 14, 2006, Defendants' petition was granted.

After full briefing and argument in the Second Circuit on June 26, 2008, the Second Circuit vacated the First Motion to Dismiss Order and remanded the case back to the Southern District of New York.  Specifically, the Second Circuit held that although there were circumstances in which a plaintiff could plead the requisite scienter against a corporate defendant without successfully pleading scienter against a specifically named individual defendant, Lead Plaintiff had failed to do so in this Action.

On August 6, 2008, Lead Plaintiff filed its Second Amended Complaint against Defendants which Defendants again moved to dismiss on September 11, 2008.  After full briefing, the Court denied in part and granted in part Defendants' second motion to dismiss (the "Second Motion to Dismiss Order") holding that Lead Plaintiff had adequately alleged violations of the Exchange Act based on statements, *inter alia*, that market conditions were to blame for losses in the Bond Collateral; that during the Class Period Merit had adequate loss reserves and

internal controls; and that during the Class Period cumulative repossession and delinquency figures for the Bond Collateral were accurately reported.

On November 25, 2009, the Court endorsed a Stipulated Pre-Trial Scheduling Order which added the Action to the November 2011 Trailing Trial Calendar. Defendants served their Answer to the Second Amended Complaint on December 11, 2009.

Subsequently, the parties entered into a period of intense merits, class, and expert discovery. In the discovery period dozens of subpoenas were issued, the parties produced and reviewed over 1.5 million pages of documents, and numerous witnesses were deposed – including the depositions of the individual Defendants and the Lead Plaintiff, a 30(b)(6) deposition of Dynex, and the depositions of four different experts.

On June 4, 2010, Lead Plaintiff filed its motion for class certification, seeking to certify a class of all purchasers of the Merit Bonds during the Class Period that were damaged thereby. After full briefing and oral argument, this Court found the Lead Plaintiff and the Class had satisfied all of the requirements of Rule 23, and, on March 7, 2011, issued an order certifying the class of Merit Bond purchasers during the Class Period ("Class Certification Order"). On March 18, 2011, Defendants filed a petition with the United States Court of Appeals for the Second Circuit, pursuant to Rule 23(f), seeking leave to appeal the Class Certification Order. Lead Plaintiff filed their Opposition on March 28, 2011. On June 2, 2011, the Second Circuit denied Defendants' Rule 23(f) petition.

While Lead Plaintiff's motion for class certification was pending, Defendants filed a Motion to Dismiss the Second Amended Complaint for Fraud on the Court on December 21, 2010, a matter which was referred to Magistrate Judge Debra Freeman. After full briefing, Magistrate Freeman issued a Report and Recommendation recommending denial of Defendants'

motion to dismiss on multiple grounds (the "Report"). Defendants filed objections to the Report on May 16, 2011 and Lead Plaintiff filed its Response to Defendants' Objections on May 27, 2011. On June 21, 2011, this Court adopted the Report's findings and rejected Defendants' objections.

On June 21, 2011, after the denial of Defendants' Rule 23(f) petition, the Court entered an order approving Lead Plaintiff's proposed Notice of Pendency of Class Action Litigation (the "Notice of Pendency") and approved Lead Plaintiff's selection of Garden City Group, Inc. ("Garden City Group" or "GCG") to serve as the Notice Administrator (the "June 21 Order"). The Court's June 21 Order required Garden City Group to mail the Notice of Pendency to all record holders that had been found by Lead Plaintiff during discovery with the instruction of either providing the names and addresses of all beneficial owners or forwarding the Notice of Pendency to beneficial owners themselves. The June 21 Order also required that Garden City Group publish a Summary Notice of Pendency in *Investor's Business Daily*, *Business Wire* and on the *DTC Electronic Legal System* and required Defendants to post the Notice of Pendency on their website. On June 30, 2011, the Notice of Pendency was published in *Investor's Business Daily*, on *Business Wire*, on the *DTC Electronic Legal System* and on Dynex Capital's website.

In addition, the June 21 Order required Lead Counsel to subpoena financial institutions for trade records, in addition to the trade records already received during discovery, in order to identify the beneficial holders of the Merit Bonds by name and address. As a result, Lead Counsel received documents evidencing more than 1,700 additional transactions in the Merit Bonds complete with client names and addresses. All of these purchasers were also sent a copy of the Notice of Pendency. The Affidavit of Jose C. Fraga describing Garden City Group's Compliance with the June 21 Order is attached as Exhibit 2 to the Rehns Declaration.

The Notice of Pendency informed the Class Members of the pending litigation and their right to request an exclusion from the Class. The Notice of Pendency also informed Class Members that "if a proposed settlement of the lawsuit is reached, it will be subject to approval by the Court. You will receive notice of any such proposed settlement, and members of the Class who have not previously excluded themselves will have an opportunity to object to the terms of the proposed settlement." Rehns Declaration Ex. 3. To date, Notice Administrator Garden City Group has received only one request for exclusion which accounted for less than $7,000 of the more than $630 million worth of Merit Bonds that were offered. *See* Rehns Declaration Ex. 4.

On July 15, 2011, Defendants moved for Summary Judgment. Lead Plaintiff filed its Opposition on August 15, 2011 and Defendants' filed their Reply on September 6, 2011. The Court held oral arguments on Defendants' summary judgment motion on September 14, 2011. The motion is currently *sub judice*.

On September 27, 2011, Lead Plaintiff's representatives explored a potential negotiated resolution of the claims against the Dynex Defendants in mediation sessions under the auspices of Jed D. Melnick, the Managing Mediator for the Weinstein Group, in an effort to reach a settlement in this Action. Shortly after this mediation, and as a result thereof, the parties reached an agreement for the resolution of this Action. On October 3, 2011, the parties executed a formal Memorandum of Understanding setting forth the agreement to settle this matter. On October 4, 2011, the Parties contacted the Court to inform it of the executed Memorandum.

At the time the Memorandum of Understanding was executed, Lead Plaintiff and Class Counsel had a good understanding of the strengths and weaknesses of the claims of the Class and the Dynex Defendants' potential defenses after more than six years of intense litigation, extensive discovery, and a fully briefed summary judgment motion. In light of (i) the

Settlement's substantial benefits (including the payment of $7.5 million for the benefit of the Class); (ii) the cost and risks of continuing the litigation against the Dynex Defendants through trial and appeals; (iii) that the proposed Settlement resulted from arm's-length negotiations assisted by an experienced mediator; and (iv) the approval of the Settlement by the Court-appointed Lead Plaintiff, it is respectfully submitted that the Settlement warrants the Court's preliminary approval so that that notice can be provided to the Class.

## ARGUMENT

### I.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy") (internal quotation marks and citation omitted).  Approval of a proposed settlement is within the discretion of the district court, to be exercised in accordance with public policy strongly favoring pretrial settlement of class action lawsuits. *In re Interpublic Sec. Litig.*, Nos. 02 Civ. 6527(DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.'  First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (footnote omitted).  During this first-step, a court must consider whether the settlement warrants preliminary approval, provide notice to the proposed class and the schedule a final

settlement hearing. In the second-step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the court considers whether the settlement warrants "final approval." *Id.* at 200 n.71.[5]

As explained by Judge Robert Sweet:

In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted. Once preliminary approval is bestowed, the second step of the process ensues. . . .

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (internal citation omitted); *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102 (citations omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks and citation omitted).

The terms of the proposed Settlement here are clearly "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87. Although Lead Plaintiff and Plaintiff's

---

[5] A final approval determination is based on an analysis of nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation being settled; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the litigation as a class action through trial; (7) ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of best possible recovery; and (9) the range of reasonableness of the settlement to a possible recovery in light of the attendant risks of litigation. *Id.* at 463.

Counsel believe that the claims asserted in the Litigation against the Dynex Defendants are meritorious, continued litigation posed the real risk that, following contested motions (*e.g.*, the pending summary judgment motion), a trial and/or further appeals, a lesser recovery (or no recovery at all) could result.

For instance, in their pending summary judgment motion, Defendants argued, *inter alia*, that a reasonable juror could not: (1) conclude that Defendants misrepresented, or failed to disclose any material fact; (2) conclude that Defendants acted with scienter with respect to any statement or omission; or (3) conclude that Plaintiff established loss causation. Even assuming that Defendants' motion for summary judgment was denied, each of these issues involves complicated law and facts, and there remains a significant risk that a jury might agree with the Dynex Defendants on one or more of these issues. Moreover, there was significant disagreement on damages, with no certainty as to how a jury would rule on damages of Plaintiffs prevailed on liability. In addition, though the Class has been successfully certified, it is one of the first classes of asset backed bonds to be certified and thus could present complex questions for the Second Circuit on a potential appeal. Finally, Defendants had limited resources and there was no insurance available to pay for settlement. As described above, in a press release announcing the settlement, Dynex explained that it would pay for it entirely out of its own pocket.

Thus, the proposed Settlement which provides a substantial monetary benefit to the Class of $7.5 million in cash. As discussed above, had Plaintiffs survived the pending motion for summary judgment and then prevailed in all respects at trial and appeal, there was still a major uncertainty as to what damages might be awarded. There were many litigation risks plus the issues of Defendants' limited resources. As Dynex explained publicly, it is being paid entirely

from Dynex's cash holdings and not from insurance.[6] The proposed Settlement also compares very favorably with the median settlement for securities cases, which in 2009 was 2.3% of damages as estimated by plaintiffs.[7]

The Settlement was negotiated at arm's-length by counsel who were well-informed of the issues in the Litigation, and are experienced in complex securities class actions. As discussed above in more detail, the case settled approximately one month before trial, after it had been actively litigated for over six years, which included an interlocutory appeal to the Second Circuit, full merits and fact discovery (including the production and review of over 1.5 million pages of documents and fact and expert depositions, including the deposition of Defendants), the certification of the class, and full briefing on summary judgment.

Moreover, the Settlement was achieved with the significant assistance of an experienced mediator and with the input of Lead Plaintiff, a sophisticated institutional investor. These factors further support approval of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (the participation of sophisticated institutional investor lead plaintiffs in the settlement process supports approval of settlement). Accordingly, Lead Plaintiff respectfully submits that the Court should preliminarily approve the Settlement.

---

[6] *See* fn. 4, *supra*.

[7] *See* fn. 3, *supra*.

## II.     NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the Preliminary Approval Order, Lead Plaintiff will notify Class Members of the Settlement by mailing the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort.  The Notice will advise Class Members of (i) the pendency of the class action; (ii) the essential terms of this Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses.  The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation or the motion for attorneys' fees and reimbursement of litigation expenses.  The proposed Preliminary Approval Order further requires Lead Plaintiff to cause the Summary Notice to be sent to Class Members at their last known address and to identifiable nominees for Class Members, and to be published in *Investor's Business Daily*.  Lead Counsel will also post a copy of the Notice on Lead Counsel's website, and on the website of the Claims Administrator.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(7).  The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings" *Wal-Mart*, 396 F.3d at 114 (internal quotation marks and citation omitted).  The manner of providing notice, which includes individual notice by mail to all Class Members who have been identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *Global Crossing*, 225 F.R.D. at 448-49.

## CONCLUSION

Lead Plaintiff respectfully requests that the Court (i) preliminarily approve the proposed Settlement as within the range of possible fairness, reasonableness and adequacy; (ii) approve the proposed form and manner of notice to putative Class Members; and (iii) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses no sooner than one hundred (100) days after the entry of the Preliminary Approval Order. A proposed Preliminary Approval Order is being submitted herewith.

Dated: November 15, 2011

Respectfully submitted,
COHEN MILSTEIN SELLERS & TOLL PLLC

_____
Richard A. Speirs

Joel P. Laitman
Christopher Lometti
Catherine Torrell
Michael Eisenkraft
Daniel B. Rehns
Kenneth M. Rehns
88 Pine Street, Fourteenth Floor
New York, New York 10005
Telephone: (212) 838-7797

Steven J. Toll
1100 New York Ave, NW, Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600

*Lead Counsel for Lead Plaintiff and the Class*