**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------- X

**IN RE DYNEX CAPITAL, INC. SECURITIES LITIGATION** : **Civ. No.: 05-1897 (HB)**

-------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR FINAL DISTRIBUTION**

Cohen Milstein Sellers & Toll PLLC ("Lead Counsel") submits this Application pursuant to paragraph 24 of the Amended Stipulation of Settlement with Defendants dated November 30, 2011 (the "Stipulation"). By Order and Final Judgment dated March 13, 2012 (the "Final Order"), this Court approved the Settlement and directed the parties to consummate the Stipulation in accordance with its terms and provisions. Paragraph 24 of the Stipulation requires Lead Counsel to apply to the Court for an order (the "Class Distribution Order") approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of claims submitted herein and approving any fees and expenses of the Claims Administrator not previously applied for, and directing payment of the Net Settlement Fund to Authorized Claimants. Pursuant to the Stipulation, Lead Counsel hereby applies for the Class Distribution Order and requests that the Court postpone entry of such order for 30 (thirty) days from the filing of this application in order to provide time for any claimant disputing Lead Counsel's recommendations to respond.

## I. BACKGROUND

As described more fully herein, by virtue of this Distribution Application, Lead Counsel seeks authorization to distribute the settlement fund which will provide an excellent result for all eligible claimants, an estimated recovery of, on average, 75% of recovered losses to eligible claimants. *See* Affidavit of Jason Zuena in Support of Lead Counsel's Application for Final Distribution ("Zuena Affidavit"), ¶17, attached hereto as Exhibit 1. On November 30, 2011, Lead Plaintiff Pension Fund Local 445 ("Lead Plaintiff"), and Defendants Dynex Capital, Inc. ("Dynex Capital"), Merit Securities Corporation ("Merit Securities"), Stephen J. Benedetti ("Benedetti") and Thomas H. Potts ("Potts") (collectively, "Defendants", and Defendants and Lead Plaintiff, on its own behalf and on behalf of Members of the Class, collectively, the "Parties"), entered into the Stipulation. The Stipulation provided for the settlement of this action on behalf of a Class consisting of all persons or entities who purchased or acquired Merit

Securities Corporation Collateralized Series 12 and Series 13 Bonds between February 7, 2000 and May 13, 2004, inclusive (the "Class Period"). Excluded from the Class are (i) Defendants; (ii) their respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and (iii) any entity in which any Defendant has or had a controlling interest. Also excluded from the Class are those persons or entities who excluded themselves by submitting a valid request for exclusion in accordance with the requirements set forth in the Notice of Pendency of Class Action Litigation ("Notice of Pendency") mailed on or about June 30, 2011, or the Notice of Proposed Settlement, Final Approval Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, dated December 27, 2011 ("Notice of Settlement"). Only one putative Class Member has requested exclusion from the Settlement by means of a request for exclusion in accordance with the requirements set forth in the Notices.

The Notice of Settlement and Proof of Claim were mailed to all Class Members pursuant to the Order for Notice and Hearing, dated December 5, 2011 (the "Preliminary Order"). Pursuant to the Court's Preliminary Order, Class Counsel retained Garden City Group, Inc. (the "Claims Administrator"), a firm specializing in the administration of class action settlements, to print and mail copies of the Notice and Proof of Claim forms to the members of the Class, to prepare tax returns for the Settlement Fund, to process the Proofs of Claim submitted by Class Members, and to effectuate distribution of the Net Settlement Fund to the Class Members who submitted acceptable Proofs of Claim.

On December 5, 2011, Court held a hearing to consider the proposed settlement, approved the proposed settlement as fair, reasonable, and adequate, dismissed this action as

against the Defendants, and directed the parties to consummate the Stipulation in accordance with its terms and provisions.

A total of 301 persons or entities have filed claims with the Claims Administrator. Zuena Aff., at ¶17. Of those claims, 99 have been provisionally accepted for a total Recognized Loss of $5,754,087.55. *Id.*, ¶18. Currently, the Net Settlement Fund available for distribution to eligible claimants is approximately $4.3 million. As a result, each eligible claimant is estimated to receive approximately 75% of their Recognized Loss. This is an incredible result and far surpasses the average recoveries in most securities class action litigations. *See In re Ramp Corp. Secs. Litig.*, 2008 U.S. Dist. LEXIS 213 (S.D.N.Y. Jan. 4, 2008) (class action securities settlement where recovery of about one-third of the losses considered an "***excellent recovery***") (emphasis added).

## II. CLAIMS ADMINISTRATION

Under the terms of the Stipulation, a $7,500,000 Settlement Fund was established for the settlement of the Claims asserted against the Defendants. Pursuant to the Stipulation and the Notice of Settlement and Proof of Claim, all Class Members wishing to participate in the Settlement Fund were required to submit Proofs of Claim by mail, postmarked on or before June 4, 2012. As demonstrated by the accompanying Affidavit of Jason Zuena (the "Zuena Affidavit"), the Claims Administrator received and reviewed all submitted claims and, to the extent that a claim was deficient in any regard, the Claims Administrator notified the claimant of the deficiency and advised the claimant as to the possible ways to cure the deficiency. Where a claimant failed to cure a defective claim after notice, or where the claim showed that the claimant was not entitled to receive a share of the Net Settlement Fund, the Claims Administrator notified the claimant of the rejection of the claim and provided the claimant with notice of the method for the claimant to request this Court's review of the Claims Administrator's administrative determination rejecting the claim. Copies of sample rejection letters are attached

as exhibits to the Zuena Affidavit, Exhibit A. Attached as exhibit B-1 to the Zuena Affidavit is a schedule of the timely filed eligible Authorized Claimants.

**A. Late, Yet Otherwise Eligible Claims**

Four eligible claims were received after the June 4, 2012 submission deadline. No claim has been rejected because it was received after the initial submission deadline and we believe no delay has resulted from the acceptance of these two claims. It is our belief that when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the cut-off date, but while the claims were still being processed. Accordingly, it is respectfully requested that this Court approve, in accordance with paragraph 22 of the Stipulation, the administrative determination not to reject valid claims submitted after the June 4, 2012 deadline solely because of lateness. Attached as exhibit B-2 to the Zuena Affidavit is a summary schedule of the late but otherwise eligible Authorized Claimants.

However, there must be a final cut-off date after which no more claims may be accepted in order that there may be a proportional distribution of the Net Settlement Fund. Acceptance of any claim received after preparation of this application would necessarily require a delay in the distribution. Accordingly, it is also respectfully requested that this Court enter an Order directing that no claim submitted after March 1, 2013, the date of submission of this application, be included in the initial distribution for any reason whatsoever. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citations omitted).

## III. FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR

Lead Counsel applies to the Court for an order approving payment of the remaining balance owed to the Claims Administrator. See Preliminary Order, at ¶25; Stipulation, at ¶13.[1] In accordance with the GCG's agreement with Lead Counsel to act as the Claims Administrator herein, the GCG was responsible for mailing notice to the Class, processing the claims, preparing the tax returns for the Settlement Fund, and distributing the Net Settlement Fund to accepted claimants. As set forth in Exhibit C to the Zuena Affidavit, the Claims Administrator's fees and expenses for its work on behalf of the Class total $103,823.26. Lead Counsel has already paid GCG $70,144.47. Therefore, Lead Plaintiff respectfully requests that the Court direct and authorize the payment from the Settlement Fund of the $33,678.79 balance due to the Claims Administrator. *See* Zuena Affidavit, Exhibit C.

## IV. DISTRIBUTION OF NET SETTLEMENT FUND

It is also respectfully requested that the Court enter an order directing and authorizing distribution of the balance of the Settlement Fund, plus the interest accrued thereon, after the deduction of the fees and expenses previously awarded and those requested herein, to the Class Members whose claims have been accepted as set forth on the list of accepted claims submitted with the Zuena Affidavit, in proportion to their Recognized Claims as shown therein. *See* Zuena Affidavit Exhibit B-1 and B-2.

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Net

---

[1] Paragraph 25 of the Preliminary Order authorized Lead Counsel to pay GCG for all reasonable Notice and Administration Costs in an amount not to exceed $125,000 without further approval from Defendants or order from the Court. Lead Counsel hereby seeks authorization to pay the outstanding balance and any additional amounts reasonably incurred by the Claims Administrator during the distribution phase of this settlement.

Settlement Fund, be released and discharged from any and all claims arising out of such involvement beyond the amount allocated to them. Accordingly, it is respectfully requested that the Court enter an Order allowing for these terms.

## V. DISPOSITION OF ANY UNCLAIMED/UNCASHED

Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid claims will not be cashed promptly. In order to encourage Class Members to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, we propose that all the distribution drafts bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 120 DAYS AFTER ISSUE DATE."

Paragraph 10 of the Stipulation provides that if any funds remain in the Net Settlement Fund after distribution to the Class then, after payment of any further Notice and Administration Costs and Taxes, Lead Plaintiff and Defendants shall petition the Court regarding the appropriate disposition of such remaining funds.

Lead Counsel requests that in the event funds remain after distribution to the Class, any residual funds be awarded to iCivics, a 501(c)(3) public charity, that describes itself as a "web-based education project designed to teach students civics and inspire them to be active participants in our democracy;" and The Institute for Law and Economic Policy ("ILEP"), which describes itself as "a public policy research and educational foundation – a think tank – established to preserve, study, and enhance access to the civil justice system by all consumers." Additional information regarding iCivics and ILEP can be found at www.icivics.org and www.ilep.info.

The proposed Class Distribution Order confirms the Stipulation's provisions for such redistribution of any residue of the Net Settlement Fund, and Lead Counsel will provide the Court with an accounting of the Distribution following its completion.

## VI. THE ORDER FOR DISTRIBUTION OF CLASS SETTLEMENT FUND SHOULD BE APPROVED

Lead Counsel submits that the work performed, as explained above, was conducted fairly and in accordance with the terms and provisions of the Stipulation. Accordingly, Lead Counsel has moved for an Order: (a) approving the administrative determinations of the Claims Administrator accepting and rejecting claims submitted herein; (b) directing payment of the remaining fees owed to the Claims Administrator in connection with the settlement administration, taxation, and distribution of the Settlement Fund; (c) directing distribution of the Net Settlement Fund, after deduction of the payments requested herein, to Class Members whose Proofs of Claim have been accepted; (d) authorizing the transfer of any funds remaining in the Net Settlement Fund after the distribution to Authorized Claimants described above to ICivics and The Institute for Law and Economic Policy in equal shares; and (e) authorizing destruction of the paper Proofs of Claim one year after distribution of the Net Settlement Fund, and authorizing destruction of electronic copies of claim records three years after distribution of the Net Settlement Fund.

## VII. CONCLUSION

For the reasons described above, Lead Counsel's Application for an Order for Distribution of Class Settlement Fund should be approved.

Dated: March 1, 2013

Respectfully submitted,

*/s/ Christopher Lometti*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Joel P. Laitman
Christopher Lometti
Richard Speirs
Michael B. Eisenkraft
Daniel B. Rehns
Kenneth M. Rehns

88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-0177
Fax: (212) 838-7745

Steven J. Toll
1100 New York Ave NW
Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Lead Counsel for*
*Lead Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I, Kenneth M. Rehns, hereby certify that, on March 1, 2013, I caused the foregoing document to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

*/s/ Kenneth M. Rehns*
Kenneth M. Rehns